[Cite as *Nationwide Gen. Ins. Co. v. Oasis Surf & Turf, Ltd.*, 2025-Ohio-4471.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

NATIONWIDE GENERAL
INSURANCE COMPANY,                      :

      Plaintiff-Appellee,          :

                                    No. 114801

      v.                           :

OASIS SURF & TURF, LTD.,
ET AL.,                                 :

      Defendants-Appellants.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 25, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-994141

---

### *Appearances:*

Cavitch, Familo & Durkin Co., L.P.A., Gregory E. O'Brien,
and Clayton Papenfus, *for appellee.*

Ankuda, Stadler & Moeller, Ltd., and Paul R. Morway, *for
appellant.*

MARY J. BOYLE, J.:

{¶ 1} Plaintiff-appellee Nationwide Insurance Company ("Nationwide")
filed a complaint for declaratory judgment against defendants-appellants Oasis Surf
& Turf, Ltd. ("Oasis"), Gary Patterson ("Patterson"), Joseph Mercury ("Mercury"),

Kimberly Lockett ("Lockett"), and Diamond Phelps ("Phelps") (collectively "the Defendants"). Lockett appeals the trial court's decision granting summary judgment in favor of Nationwide declaring that Lockett was not an "insured" under the policy.[1] For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} This case stems from the murder of Chyna Shepherd ("the victim") at Oasis, a bar in Akron, Ohio, which was owned and operated by Patterson and Mercury. Gladys Ingersoll ("Ingersoll") shot and killed the victim in the bathroom of Oasis at approximately 3:00 a.m. on July 29, 2022. In January 2025, Ingersoll was convicted of murder after a jury trial and was sentenced to 21 years to life in prison.

{¶ 3} While the murder case was pending, Phelps, as administrator of the estate of the victim, filed a wrongful-death suit against Ingersoll and the Defendants, in the Summit County Common Pleas Court on July 27, 2023. The suit alleged that Ingersoll intentionally killed the victim, while the remaining defendants were "negligent and/or acted willfully, wantonly and with reckless disregard for the safety of others in the management and operation of Oasis," causing the victim's death. (Complaint, exhibit C.) Oasis is a limited partnership whose general partners include Patterson and Mercury. (Complaint, exhibit C.) Lockett owns the property where Oasis operates.

---

[1] Default judgment was awarded in favor of Nationwide and against Oasis, Patterson, Mercury, and Phelps. (J.E., Jan. 6, 2025.) That judgment has not been appealed.

{¶ 4} On October 24, 2023, Lockett, through her personal attorney, reported the wrongful-death claim to Nationwide. Thereafter, Nationwide retained counsel to defend Oasis, Patterson, and Mercury. Nationwide hired separate counsel for Lockett who owned the property and leased it to her brother Patterson. Nevertheless, on November 8, 2023, Nationwide issued a reservation of rights letter to Oasis, Patterson, Mercury, and Lockett, essentially explaining that the policy issued to Oasis likely did not cover the parties or the claim. The letter detailed the multiple provisions of the policy that allowed denial of coverage. Ultimately, the wrongful-death case was stayed pending resolution of the criminal trial scheduled for December 2024.

{¶ 5} Meanwhile, on March 8, 2024, Nationwide filed a complaint for declaratory judgment against the Defendants in the Cuyahoga County Court of Common Pleas requesting the court declare the parties' rights and obligations under the Nationwide Premier Business Owners liability policy ("policy") issued to Oasis. Specifically, Nationwide requested that the court declare that it had no duty to defend or indemnify the Defendants. Oasis, Patterson, Mercury, and Ingersoll failed to file an answer, and default judgment was granted against them in favor of Nationwide. Lockett, however, filed an answer and counterclaim. She also filed a third-party complaint against Eshbaugh Insurance Services LLC and Craig Lambert, her insurance broker. The third-party complaint was voluntarily dismissed by Lockett in August 2024.

**{¶ 6}** In September 2024, Nationwide filed a motion for summary judgment against Lockett asserting that (1) Lockett was not an "insured" under the policy; (2) the policy was void due to fraudulent misrepresentations made at its inception; (3) the abuse exclusion applied; and (4) Nationwide was prejudiced by the late notice. Additionally, Nationwide argued that Lockett's counterclaim for declaratory judgment and breach of contract failed because she could not prove she was an "insured" under the policy, or the existence of a contract or breach on the part of Nationwide. Lockett filed a brief in opposition, and Nationwide filed a reply. Thereafter, the trial court granted Nationwide's motion for summary judgment stating:

> [Nationwide's] motion for summary declaratory judgment (1) in its favor to the effect that [Lockett] is not an insured under the applicable policy and (2) in its favor on Lockett's counterclaim is granted in both respects.
>
> Based upon the evidence of record, there is no genuine issue of material fact about whether Lockett qualifies as an insured under the policy: she does not because there is no evidence that she and Oasis agreed in a written contract that Lockett would be added as an additional insured on Oasis's policy.

(J.E., Jan. 6, 2025.)

**{¶ 7}** It is from this judgment Lockett now appeals, raising the following assignments of error for review:

> **Assignment of Error I:** The trial court improperly granted summary judgment in favor of [Nationwide] by weighing evidence as to the existence of a written contract and its contents.
>
> **Assignment of Error II:** The trial court failed to consider whether [Lockett] qualifies as an insured for other reasons.

## II. Law and Analysis

### Declaratory Judgment

{¶ 8} For purposes of a declaratory-judgment action, a "controversy exists when there is a genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13 (8th Dist. 1988), citing *Burger Brewing Co. v. Liquor Control Comm., Dept. of Liquor Control*, 34 Ohio St.2d 93 (1973). Further, the Ohio Supreme Court has long held that "[a]n insurer may maintain a declaratory judgment action under R.C. Chapter 2721 for purposes of establishing its rights and obligations under a contract of insurance. The insurer, if proceeding in good faith, is entitled to bring such an action for purposes of adjudicating its duty to defend and/or indemnify its insured in a tort action brought by a third party, even where the underlying tort complaint alleges conduct within the coverage of the contract of insurance." *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108 (1987), paragraph one of the syllabus. R.C. 2721.02 authorizes a trial court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Both parties' actions sought declaratory judgment and agree that a justiciable issue existed.

### Standard of Review

{¶ 9} An appellate court reviewing a declaratory-judgment matter applies a de novo standard of review to the trial court's determination of legal issues in the case. *Amazing Tickets, Inc. v. Cleveland*, 2019-Ohio-1652, ¶ 8 (8th Dist.), citing

*Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1.  Likewise, when a declaratory judgment action is disposed of by summary judgment, the review of a trial court's resolution of legal issues is de novo.  *Id.,* citing *Hastings Mut. Ins. v. Halatek*, 2007-Ohio-6923, ¶ 29 (7th Dist.).  Under a de novo review, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment may be granted.  *Westlake v. Cleveland*, 2021-Ohio-2929, ¶ 11 (8th Dist.).

{¶ 10} Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine that

> (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.

{¶ 11} Civ.R. 56(C) also provides an exclusive list of materials that parties may use to support a motion for summary judgment:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.

{¶ 12} The moving party carries the initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).  If the movant meets this burden, the burden then shifts to the nonmoving party to provide evidence showing a genuine

issue of material fact exists. *Id.* at 293. The nonmoving party cannot simply rest on its pleadings. *Id.*

## Contract Law Applies

{¶ 13} We note that an insurance policy is a contract, and the relationship between the insurer and the insured is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109 (1984). The interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally. *Crum & Forster Indemn. Co. v. Ameritemps, Inc.,* 2013-Ohio-5419, ¶ 10 (8th Dist.). "[W]ords and phrases are to be given their plain and ordinary meaning unless there is something in the contract that would indicate a contrary intention." *Id.* at ¶ 11, citing *Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St.2d 212, 216 (1970). If the provisions of an insurance policy are clear and unambiguous a court may not enlarge the contract by implication in order to reach an objective different from that contemplated by the contracting parties. *Id.,* citing *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 168 (1982). Nevertheless, where the provisions of a contract of insurance are reasonably susceptible to more than one interpretation, they will be strictly construed against the insurer and liberally construed in favor of the insured. *Id.* at ¶ 12, citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), paragraph one of the syllabus.

**Not an "Insured" Under the Policy**

{¶ 14} In Lockett's first assigned error, she contends that the trial court improperly weighed the evidence as to the existence of a written lease and its contents, as well as Lockett's credibility when granting summary judgment in favor of Nationwide by declaring that Lockett was not an "insured" under the policy. She argues that her testimony that a written lease existed, albeit missing, is sufficient to overcome Nationwide's motion for summary judgment.[2] Nationwide counters that Lockett's testimony was insufficient to overcome summary judgment because she also needed to set forth some evidence that the written lease required Oasis, as lessee, to name Lockett, the landlord, as an additional insured under the policy. We find Nationwide's argument more persuasive.

{¶ 15} As the Fourth District stated in *Blankenship v. Travelers, Inc. Co.*, 2003-Ohio-2592, ¶ 13 (4th Dist.):

> It is axiomatic in insurance law that coverage under an insurance contract extends only to "insureds" under the policy. In any dispute concerning coverage under an insurance contract, whether the party claiming coverage under the policy is an "insured" is of primary import. If the party is found not to be an "insured" under the policy, that party cannot claim that coverage extends to them. However, where the party is found to be an "insured" under the policy, coverage will extend to them barring any other applicable condition or exclusion.

{¶ 16} Lockett asserts that she qualifies as an "insured" under the "automatic additional insureds" clause of the policy. In her opposition to summary judgment,

---

[2] We note that Lockett's brief fails to cite to the parts of the record on which she relies as required by App.R. 16(A)(7) and pursuant to App.R. 12(A)(2) this court may disregard Lockett's assigned errors. However, in the interest of justice we will address her arguments.

she argued at the trial-court level that she was covered as the grantor of a license, and/or the mortgagee, and/or the owner of the leased property. The clause that Lockett refers to lists eight categories of "persons or organizations" that "are automatically insureds *when you and they have agreed in a written contract or agreement that such person or organization be added as an additional insured on your policy.*" (Emphasis added.) (Complaint exhibit A---021.)

{¶ 17} Although Lockett testified at her deposition that she and Patterson had a written lease agreement, Lockett was not able to produce a copy of the lease. More importantly, Lockett did not testify or set forth any Civ.R. 56(C) evidence that the lost lease agreement included language that she would be added as an additional insured under Oasis's policy. The Nationwide policy provision is clear and unambiguous. In order to have coverage as an "automatic additional insured" Lockett was required to prove the written lease contained an agreement that she be added as an additional insured. Because Lockett failed to set forth such evidence, there is no genuine issue of material fact as to whether Lockett is covered under the "automatic additional insured" clause of the policy. Therefore, the trial court was correct when it declared that Lockett was not covered under the "automatic additional insured" clause.

{¶ 18} Accordingly, Lockett's first assignment of error is overruled.

{¶ 19} In Lockett's second assignment of error, she contends that the trial court erred when it failed to consider coverage under the clause that states "[a]ny person (other than your 'employee' or 'volunteer worker'), or any organization while

acting as your real estate manager[,]" is a covered insured under the policy and does not require a written contract. (Complaint, exhibit A --- 095.)

{¶ 20} The term, "real estate manager" is not defined in the policy; therefore, "[w]e look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Wells Fargo Bank, N.A. v. Am. Family Mut. Ins. Co.*, 2016-Ohio-7892, ¶ 3 (8th Dist.), citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. And "[i]f insurance policy terms are ambiguous, we construe them against the drafting party." *Id.*, citing *Thompson v. Preferred Risk Mut. Ins. Co.*, 32 Ohio St.3d 340, 342 (1987).

{¶ 21} Lockett cites *Fairless v. Acuity*, 2022-Ohio-10 (1st Dist.), in support of her argument that she is covered under the "real estate manager" clause. In *Fairless*, when defining "real estate manager" the court stated that

> [t]he plain and ordinary meaning of "real estate" is "property in buildings and land." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/real%20estate (accessed Dec. 17, 2021). The plain meaning of "manager" is "one that manages." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/ dictionary/manager (accessed Dec. 17, 2021). Thus, the plain meaning of "real estate manager" is one who manages property in buildings or land.

*Id.* at ¶ 21.

{¶ 22} Lockett seems to equate an owner of real estate to a manager of real estate. Although in some instances the owner and manager may be one in the same, that is not the case here. Lockett owns the property where Oasis operated. She

testified at her deposition that she did not own any part of Oasis and once she "rented to Oasis, [she] had nothing to do with it." (Lockett depo. p. 22.) Lockett did not know who was employed at Oasis, when it first opened, or the exact hours or days of operation. In fact, Lockett testified that she moved to Georgia three months after leasing the property to her brother and she had only been to Oasis "once or twice." (Lockett depo. p. 23.)

{¶ 23} Even when viewing the foregoing evidence most strongly in favor of the Lockett, we cannot say that a genuine issue as to any material fact remains to be litigated. Lockett cannot claim to be covered under the "real estate manager" clause, when she set forth no evidence that she managed Oasis. Therefore, we find that that reasonable minds can come to but one conclusion and that is that Lockett was not a "real estate manager" of Oasis and thus she is not a covered "insured" under the policy.

{¶ 24} Accordingly, Lockett's second assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR